# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| HAILEE JACKSON, JORDEN ESTIS, and LINDSEY KINGSBERY, on behalf of themselves and all other similarly situated employees,<br><br>Plaintiffs,<br><br>v.<br><br>HTDG, LLC d/b/a HONKY TONK CENTRAL,<br><br>Defendant. | COLLECTIVE ACTION<br><br>Case No. _____<br><br>JURY DEMAND |

## COLLECTIVE-ACTION COMPLAINT

For their Collective-Action Complaint ("Complaint") under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–19, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e17, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101 to 4-21-408, against Defendant HTDG, LLC ("Defendant" or "HTDG"), Plaintiffs Hailee Jackson, Jorden Estis, and Lindsey Kingsbery (collectively, "Plaintiffs"), on behalf of themselves and all other similarly situated employees, state as follows:

### I. INTRODUCTION

1. Plaintiffs file this collective action, on behalf of themselves and all similarly situated employees, to remedy violations of the FLSA. This collective action seeks to recover unpaid minimum wages and overtime compensation for Plaintiffs, as well as all similarly situated current and former tipped employees who worked for HTDG within 3

years prior to the filing of this Complaint.

2. The Plaintiffs also seek to recover all damages due them for gender discrimination and sexual harassment under the THRA.

## II. JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction. Plaintiffs' claims either arise under the laws of the United States, 28 U.S.C. § 1331, or are "so related to [the federal] claims . . . that they form part of the same case or controversy under Article III of the United States Constitution," *id.* § 1367(a).

4. This Court has personal jurisdiction over HTDG. Defendant does business in this District, specifically in Nashville, Tennessee.

5. Venue is proper in this Court. A substantial part of the events giving rise to this action occurred within this District, HTDG does business in this District, *id.* § 1391(b), and the unlawful employment practices alleged were committed in this District, 42 U.S.C. § 2000e-5(f)(3).

6. Plaintiffs reserve the right to amend this Complaint to assert their claims for gender discrimination and sexual harassment under Title VII. Each Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") as to these claims. Once the EEOC issues them Notices of Suit Rights, Plaintiffs will timely amend this Complaint to include their claims under Title VII.

## III. PARTIES

7. Hailee Jackson ("Jackson") is an individual. She resides in Sumner County, Tennessee. Plaintiffs attach Jackson's written consent to join this action as Exhibit 1.

8. Jorden Estis ("Estis") is an individual. She resides in Davidson County, Tennessee. Plaintiffs attach Estis's written consent to join this action as Exhibit 2.

9. Lindsey Kingsbery ("Kingsbery") is an individual. She resides in Wilson County, Tennessee. Plaintiffs attach Kingsbery's written consent to join this action as Exhibit 3.

10. HTDG is a for-profit company, organized under the laws of Tennessee and registered to do business in Tennessee.

11. HTDG owns and operates Honky Tonk Central, which is located at 329 Broadway, Nashville, Tennessee 37201.

12. Honky Tonk Central is a three-story bar, live-music venue, and restaurant on Lower Broadway in Nashville, Tennessee.

13. HTDG's registered agent for service of process in Tennessee is Steven J. Meisner, 545 Mainstream Drive, Suite 101, Nashville, Tennessee 37228.

14. At all relevant times, Jackson was an employee of HTDG under the FLSA. *Id.* § 203(e)(1).

15. At all relevant times, Estis was an employee of HTDG under the FLSA. *Id.*

16. At all relevant times, Kingsbery was an employee of HTDG under the FLSA. *Id.*

17. At all relevant times, HTDG was Jackson's employer under the FLSA. *Id.* § 203(d).

18. At all relevant times, HTDG was Estis's employer under the FLSA. *Id.*

19. At all relevant times, HTDG was Kingsbery's employer under the FLSA. *Id.*

20. At all relevant times, HTDG maintained control, oversight, and direction over Plaintiffs and all similarly situated tipped employees, including timekeeping, payroll, tipping, and other employment practices that applied to them.

21. HTDG's annual gross volume of business exceeds $500,000. *Id.* § 203(s)(A)(ii).

22. At all relevant times, Jackson was an employee of HTDG under Title VII. 42 U.S.C. § 2000e(f).

23. At all relevant times, Estis was an employee of HTDG under Title VII. *Id.*

24. At all relevant times, Kingsbery was an employee of HTDG under Title VII. *Id.*

25. At all relevant times, HTDG was Jackson's employer under Title VII. *Id.* § 2000e(b).

26. At all relevant times, HTDG was Estis's employer under Title VII. *Id.*

27. At all relevant times, HTDG was Kingsbery's employer under Title VII. *Id.*

28. At all relevant times, Jackson was an employee of HTDG under the THRA.

29. At all relevant times, Estis was an employee of HTDG under the THRA.

30. At all relevant times, Kingsbery was an employee of HTDG under the THRA.

31. At all relevant times, HTDG was Jackson's employer under the THRA. Tenn. Code Ann. § 4-21-102(5).

32. At all relevant times, HTDG was Estis's employer under the THRA. *Id.*

33. At all relevant times, HTDG was Kingsbery's employer under the THRA. *Id.*

## IV. COLLECTIVE-ACTION ALLEGATIONS

34. Plaintiffs bring this collective action under § 216(b) on behalf of themselves and all similarly situated current and former tipped employees at HTDG.

35. On information and belief, there are dozens of current and former tipped employees who are similarly situated to Plaintiffs and who HTDG denied minimum wages and overtime compensation.

36. HTDG unlawfully required Plaintiffs, as well as other individuals employed as tipped employees, to contribute their tips to invalid tip-sharing arrangements and shaved hours worked off Plaintiffs' recorded hours, denying them minimum wages for hours worked under 40 in a workweek and overtime compensation for hours worked over 40 in a workweek.

37. Plaintiffs seek to proceed collectively on Counts I and II of this Complaint under § 216(b) on behalf of themselves and the following collective of persons: **All current and former tipped employees who worked for HTDG between January 22, 2017, and the present** ("Putative Collective").

38. HTDG was aware or should have been aware that federal law required it to pay Plaintiffs and the Putative Collective at least the applicable minimum wage for all hours worked under 40.

39. HTDG was aware or should have been aware that federal law required it to pay Plaintiffs and the Putative Collective an overtime premium of 1.5 times the regular rate

5

of pay for all hours worked over 40.

40. HTDG was aware or should have been aware that federal law prohibited it from requiring Plaintiffs and the Putative Collective to contribute their tips to invalid tip-sharing arrangements.

41. HTDG applied the same unlawful policies and practices to all its tipped employees.

42. The Putative Collective is readily identifiable and locatable within HTDG's business records.

43. The Putative Collective should be notified of and allowed to join this collective action under § 216(b).

44. Unless the Court promptly issues notice to the Putative Collective, its members will not be able to secure compensation that they are entitled to and that HTDG has unlawfully withheld.

## V. FACTS

### A. FLSA Minimum-Wage and Overtime Violations

45. The tip-credit, minimum-wage, and overtime provisions of the FLSA all apply to HTDG. 29 U.S.C. §§ 203(m), 206–07.

46. HTDG employs several kinds of tipped employees at Honky Tonk Central.

47. HTDG employs tipped employees as bartenders, bar leads, food runners, and servers.

48. Job duties for bartenders at Honky Tonk Central include but are not limited to greeting and serving customers at the bar and making drinks for servers to distribute to

other customers.

49. Job duties for bar leads include but are not limited to the duties of bartenders, as well as keeping a set of keys to Honky Tonk Central, counting the money in the safe, and closing floors of Honky Tonk Central when appropriate.

50. Job duties for food runners include but are not limited to delivering customers orders from the kitchen to customers.

51. Job duties for servers include but are not limited to greeting and serving customers as tables, taking food and drink orders, entering orders into the computer system, and delivering those orders to customers.

52. HTDG applies the same employment policies, practices, and procedures to all its tipped employees, including policies, practices, and procedures regarding tipping, minimum wages, and overtime compensation.

53. HTDG has a policy of paying all its tipped employees a direct, cash wage of less than the federal minimum wage of $7.25 per hour.

54. HTDG has policy of taking a tip credit against its minimum-wage obligations for all its tipped employees.

55. Because HTDG takes a tip credit under the FLSA for all its tipped employees, federal law deems all HTDG's tipped employees to be minimum-wage employees.

56. Jackson worked as a bartender for HTDG at Honky Tonk Central from approximately March 2014 until March 2019.

57. HTDG paid Jackson a direct, cash wage of $2.13 per recorded hour when she worked as a bartender.

58. HTDG claimed the maximum tip credit of $5.12 per hour for every recorded hour that Jackson worked as a bartender.

59. Estis worked as a bartender and a bar lead for HTDG at Honky Tonk Central from approximately April 2016 until April 2019.

60. HTDG paid Estis a direct, cash wage of $2.13 per recorded hour when she worked as a bartender.

61. HTDG claimed the maximum tip credit of $5.12 per hour for every recorded hour that Estis worked as a bartender.

62. HTDG paid Estis a direct, cash wage of $6.00 per recorded hour when she worked as a bar lead.

63. HTDG claimed a tip credit of $1.25 per hour for every recorded hour that Estis worked as a bar lead.

64. Kingsbery worked as a bartender and a bar lead for HTDG at Honky Tonk Central from approximately February 2012 until November 2018.

65. HTDG paid Kingsbery a direct, cash wage of $2.13 per recorded hour when she worked as a bartender.

66. HTDG claimed the maximum tip credit of $5.12 per hour for every recorded hour that Estis worked as a bartender.

67. HTDG paid Kingsbery a direct, cash wage of $6.00 per recorded hour when she worked as a bar lead.

68. HTDG claimed a tip credit of $1.25 per hour for every recorded hour that Estis worked as a bar lead.

69. HTDG has a policy of requiring all its bartenders and bar leads to share their tips with each other and with other tipped employees in mandatory tip-sharing arrangements.

70. There is a separate, mandatory tip-sharing arrangement each night for each of the three floors at Honky Tonk Central.

71. Servers, food runners, barbacks, and janitors (also known as "trash guys") participate in the tip-sharing arrangements with the bartenders and bar leads.

72. Servers share 3% of their alcohol sales with bartenders and bar leads as part of the tip-sharing arrangements.

73. Bartenders and bar leads share 15% of their tips with barbacks and janitors as part of the tip-sharing arrangements.

74. The servers, bartenders, and bar leads pay $5 per person to the food runners as part of the tip-sharing arrangements.

75. After servers pay 3% of their alcohol sales into the tip-sharing arrangement and bartenders and bar leads make their payments to food runners, barbacks, and janitors, bartenders and bar leads split the remaining tip money in the tip-sharing arrangements equally.

76. HTDG lets employees who do not qualify as tipped employees under the FLSA, such as the janitor, participate in the tip-sharing arrangements.

77. Including the janitor in the tip-sharing arrangements disqualifies Defendant from claiming a tip credit for its tipped employees.

78. HTDG required Plaintiffs and other similarly situated employees to pay for

any cash shortages from their tips or personal funds.

79. Requiring tipped employees to pay for cash shortages out of their tips or personal funds disqualifies Defendant from claiming a tip credit for its tipped employees.

80. The FLSA, as well as its implementing regulations, requires an employer who claims a tip credit to provide certain information to its tipped employees before taking a tip credit.

81. HTDG did not provide all the required information to its tipped employees before claiming a tip credit for them.

82. HTDG's failure to give its tipped employees notice of all the required information disqualifies Defendant from claiming a tip credit for its tipped employees.

83. HTDG does not pay its tipped employees for all hours worked.

84. Tipped employees clock in when they arrive at work and clock out when they leave work, recording all their hours worked.

85. HTDG deletes from its records hours its tipped employees work and record in the timekeeping system

86. HTDG does not compensate its tipped employees for the deleted hours.

87. HTDG's deletion of hours results in minimum wage and/or overtime pay violations.

88. Considering HTDG's deletion from the recorded hours of its tipped employees, it does not pay the minimum cash wage of $2.13 per hour for recorded hours worked and, therefore, cannot claim a tip credit.

89. HTDG also fails to pay the proper overtime premium for all hours worked

over 40 in a workweek.

**B.    FLSA Retaliation**

90.    In March 2019, one of Defendants' managers, Frank Ficili ("Ficili") blamed Jackson for a shortage in her cash drawer.

91.    Ficili accused Jackson of stealing money.

92.    Defendants required Jackson to pay back the alleged shortage out of her tip money.

93.    Jackson informed Ficili that she did not steal money and complained about having to pay for a shortage that she did not cause out of her tip money.

94.    Because requiring tipped employees to pay for shortages out of their tip money violates the FLSA, Jackson opposed an illegal pay practice when she complained about paying for the shortage.

95.    Jackson's opposition to paying for the shortage was protected activity under the FLSA.

96.    HTDG fired Jackson at the end of March 2019 for opposing company policies that violate the FLSA.

**C.    Gender Discrimination and Sexual Harassment**

97.    At all relevant times, Defendant's managers at Honky Tonk Central included Jay Emery ("Emery") and Ficili.

98.    Emery supervised Jackson during her employment as a bartender at Honky Tonk Central.

99.    Ficili supervised Jackson during her employment as a bartender at Honky

Tonk Central.

100. Emery supervised Estis during her employment as a bartender and bar lead at Honky Tonk Central.

101. Ficili supervised Estis during her employment as a bartender and bar lead at Honky Tonk Central.

102. Emery supervised Kingsbery during her employment as a bartender and bar lead at Honky Tonk Central.

103. Ficili supervised Kingsbery during her employment as a bartender and bar lead at Honky Tonk Central.

104. Emery supervised the Putative Class members during their employment with Honky Tonk Central.

105. Ficili supervised the Putative Class members during their employment with Honky Tonk Central.

106. Emery made derogatory and sexual comments to his female employees, including Plaintiffs and the Putative Class members, daily.

107. Examples of Emery's derogatory and sexual comments to his female employees include, but are not limited to, the following:

    a. Referring to his female employees as "dumb bitches";

    b. Asking Kingsbery if she was pregnant and if he could punch her in the stomach and then telling her to "tighten up";

    c. Asking female employees who had breast augmentations to show him their breasts so that he could compare the doctors' work;

d. Telling female employees to "show a little more" skin during private parties at Honky Tonk Central;

e. Telling female employees to stand in front of the camera when they changed clothes in the office at Honky Tonk Central;

f. Making comments to female employees like, "Y'all are women," and "You're stupid;" and

g. Making comments to female employees based on stereotypes about women allegedly not being good at counting and math.

108. Another female employee made a sexual harassment complaint against Emery in 2012, because Emery touched her in an inappropriate manner while at work. On information and belief, Defendant settled the sexual harassment complaint privately but did not correct Emery's discriminatory behavior.

109. Ficili made derogatory and sexual comments to his female employees, including Plaintiffs and the Putative Class members, daily.

110. Examples of Ficili's derogatory and sexual comments to his female employees include, but are not limited to, the following:

a. Asking his female employees to let him take shots of alcohol off their bodies;

b. Asking Kingsbery and other female employees to kiss each other for his entertainment;

c. Asking Estis and her two roommates who all worked at Honky Tonk Central whether they engaged in lesbian sex acts together, whether they slept in the

same bed, whether they showered together, and whether they "kept it in the family";

    d.    Telling female employees to "sex it up" by cutting their t-shirts and wearing push-up bras;

    e.    Telling Jackson to "pull [her] tits out more"; and

    f.    Making statements to female employees like, "Your ass looks good in those pants."

111. Emery treated his similarly situated male employees better than his female employees, because Emery did not make derogatory or sexual comments to his male employees.

112. Ficili treated his similarly situated male employees better than his female employees, because Ficili did not make derogatory or sexual comments to his male employees.

## COUNT I
## Failure to Pay Minimum Wages
## 29 U.S.C. § 206

113. Plaintiffs incorporate by reference all prior allegations in this Complaint.

114. Plaintiffs the Putative Collective are entitled to be paid at least the applicable minimum wage for all hours worked in a workweek.

115. HTDG employed Plaintiffs and the Putative Collective and failed to compensate them for all time worked.

116. HTDG's violations of the FLSA were willful, because they involve removing hours worked from the time records of Plaintiffs and the Putative Collective.

117. HTDG did not meet all § 203(m)'s requirements for claiming a tip credit.

Specifically, Defendant did not provide the required tip-credit notice to its tipped employees; included non-tipped employees in its tip pools; did not allow its tipped employees to retain all their tips; and did not pay its tipped employees at least $2.13 per hour for all hours worked.

118. HTDG knew or should have known that its tip-sharing arrangement did not meet the requirements of § 203(m).

119. HTDG's violations of the FLSA were willful, because HTDG knew or should have known that janitors are not tipped employees entitled to participate in a tip-sharing arrangement.

120. HTDG's willful FLSA violations extend the statute of limitations from two years to three years.

121. HTDG has failed to make a good-faith effort to comply with the FLSA regarding payment of minimum wages to Plaintiffs and the Putative Collective.

122. As a result of HTDG's violations of the FLSA, Plaintiffs and the Putative Collective suffered and continue to suffer damages, namely failing to receive all the minimum wages earned during their employment.

123. In addition to unpaid minimum wages, HTDG owes Plaintiffs and the Putative Collective liquidated damages in an amount equal to their unpaid overtime.

124. Plaintiffs and the Putative Collective are entitled to recovery of their attorneys' fees and costs.

## COUNT II
## Failure to Pay Overtime
## 29 U.S.C. § 207

125. Plaintiffs incorporate by reference all prior allegations in this Complaint.

126. Plaintiffs the Putative Collective are non-exempt employees entitled to be paid overtime compensation at 1.5 times their regular hourly rates of pay for all hours worked over 40 in a workweek.

127. HTDG employed Plaintiffs and the Putative Collective for workweeks longer than 40 hours and failed to compensate them for all the time worked in excess of 40 hours per week, at a rate of at least 1.5 times their regular hourly rate.

128. HTDG's violations of the FLSA were willful.

129. HTDG's willful FLSA violations extend the statute of limitations from two years to three years.

130. HTDG has failed to make a good-faith effort to comply with the FLSA regarding payment of overtime compensation to Plaintiffs and the Putative Collective.

131. As a result of HTDG's violations of the FLSA, Plaintiffs and the Putative Collective suffered and continue to suffer damages, namely failing to receive overtime compensation earned during their employment.

132. In addition to unpaid overtime compensation, HTDG owes Plaintiffs and the Putative Collective liquidated damages in an amount equal to their unpaid overtime.

133. Plaintiffs and the Putative Collective are entitled to recovery of their attorneys' fees and costs.

## COUNT III
### FLSA Retaliation against Jackson
### 29 U.S.C. § 215(a)(3)

134. Plaintiffs incorporate by reference all prior allegations in this Complaint.

135. Jackson engaged in FLSA-protected activity, namely complaining to an HTDG manager, Ficili, about bartenders being required to make up shortages out of their tips.

136. HTDG at all relevant times knew that Jackson had engaged in FLSA-protected activity.

137. HTDG took adverse actions against Jackson after learning that she had engaged in FLSA-protected activity, namely falsely accusing Jackson of stealing and then terminating her employment.

138. There is a causal connection between Jackson's FLSA-protected activity and the adverse employment actions that HTDG took against her.

139. HTDG's retaliation caused Jackson damages, including compensatory damages, back pay, front pay, interest, costs, and attorneys' fees.

## COUNT IV
### Gender Discrimination
### Tenn. Code Ann. §§ 4-21-311(a), -401(a)(1)

140. Plaintiffs incorporate by reference all prior allegations in this Complaint.

141. Plaintiffs and the Putative Class members are women. At all relevant times, they were and are members of a protected class.

142. Plaintiffs and the Putative Class members were at all relevant times qualified for their positions.

143. HTDG took adverse employment actions against Plaintiffs and the Putative Class members.

144. HTDG treated Plaintiffs and the Putative Class members less favorably than similarly situated male employees.

145. There is a causal connection between HTDG's adverse actions and Plaintiffs' and the Putative Class members' sex.

146. HTDG's gender discrimination caused Plaintiffs and the Putative Class members damages, including compensatory damages, back pay, front pay, interest, costs, and attorneys' fees.

**COUNT V**
**Sexual Harassment**
**Tenn. Code Ann. §§ 4-21-311(a), -401(a)(1)**

147. Plaintiffs incorporate by reference all prior allegations in this Complaint.

148. Plaintiffs and the Putative Class members are women. At all relevant times, they were and are members of a protected class.

149. Plaintiffs and the Putative Class Members were subjected to unwelcome harassment by HTDG's managerial employees, Emery and Ficili.

150. The harassment was based on Plaintiffs' and the Putative Class members' sex.

151. The harassment created a hostile work environment.

152. HTDG is vicariously liable for the sexual harassment.

153. HTDG's sexual harassment caused Plaintiffs and the Putative Class members damages, including compensatory damages, back pay, front pay, interest, costs, and attorneys' fees

## VII. PRAYER FOR RELIEF

Based on the foregoing, Plaintiffs pray for the following relief from this Court:

A. Issuing process against HTDG and requiring it to answer within the period provided by law;

B. Requiring HTDG to provide Plaintiffs the names, addresses, phone numbers, and email addresses for the Putative Collective;

C. Permitting Plaintiffs to issue notice of this collective action to the Putative Collective;

D. Giving the Putative Collective the opportunity to join this collective action by filing written consents;

E. Awarding damages to Plaintiffs in the amount of their unpaid minimum wages and overtime compensation, plus an equal amount of liquidated damages;

F. Awarding damages to all Putative Collective members who join this collective action in the amount of their unpaid minimum wages and overtime compensation, plus an equal amount of liquidated damages;

G. Awarding damages to Plaintiffs for the gender discrimination and sexual harassment they suffered while working for HTDG;

H. Requiring HTDG to pay all attorneys' fees Plaintiffs and the Putative Collective incur to bring and to maintain this collective action;

I. Requiring HTDG to pay the costs and expenses of this action;

J. Requiring HTDG to pay pre-judgment and post-judgment interest as provided by law; and

K. Granting Plaintiffs and the Putative Collective such other, further, and general relief to which they may be entitled.

## JURY DEMAND

Plaintiffs demand a jury trial.

Dated: January 22, 2020

Respectfully submitted,

/s/ *Charles P. Yezbak, III*
Charles P. Yezbak, III (#018965)
/s/ *N. Chase Teeples*
N. Chase Teeples (#032400)
YEZBAK LAW OFFICES PLLC
2002 Richard Jones Road, Suite B-200
Nashville, TN 37215
Tel.: (615) 250-2000
Fax: (615) 250-2020
yezbak@yezbaklaw.com
teeples@yezbaklaw.com

*Attorneys for Plaintiffs*